David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 9385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148
Phone: (702) 880-5554
Fax: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL ZEEVI,<br><br>                Plaintiff,<br><br>   v.<br><br>CITIBANK,<br><br>                Defendant. | : Civil Action No.:<br>:<br>:<br>:<br>: **COMPLAINT FOR DAMAGES UNDER**<br>: **THE TELEPHONE CONSUMER**<br>: **PROTECTION ACT, 47 U.S.C. ¶ 227** *ET*<br>: *SEQ.***, AND NEVADA STATE LAW**<br>:<br>: **JURY TRIAL DEMANDED**<br>: |

Plaintiff, Daniel Zeevi indvidually and on behalf of all and others similarly situated, by

undersigned counsel, states as follows:

### JURISDICTION

    1.    This action arises out of Defendant's violations of the Telephone Consumer

Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently, knowingly, and/or willfully

placing automated calls to Plaintiff's cellular phone without consent, thereby violating the TCPA. this Court has original jurisdiction over Plaintiff's TCPA claims. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740 (2012).  The Court has supplemental jurisdiction over Plaintiff's claims under Nevada common law, as they arise from the same circumstances as Plaintiff's TCPA claims.  *See* 28 U.S.C. § 1367.

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

3.      Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## PARTIES

4.      The Plaintiff, DANIEL ZEEVI ("Plaintiff" or "Mr. Zeevi"), is an adult individual who was at previously a resident of the State of Nevada, and who resided at Nevada during the time period in which the substantial portions of the events alleged below occurred, including the opening of his Citi account in 2019.  Mr. Zeevi presently resides in the State of Pennsylvania. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

5.      Defendant CITIBANK ("Citi" or "Defendant"), is a corporation doing business in the State of Nevada.  Citi is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).  Citi at all times acted by and through one or more of its agents or representatives.  Citi purposefully availed itself of the jurisdiction of this State in connection with this matter by (1) transmitting text messages to Plaintiff during the time he was a resident of the State of Nevada, and (2) agreeing to permit Plaintiff to open an account from a branch located

in the State of Nevada, actions of which gave rise to a substantial portion of the conduct alleged.

## STATUTORY BACKGROUND

### *The Telephone Consumer Protection Act of 1991*

6.      In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

7.      The TCPA regulates, among other things, the use of automated telephone dialing systems.

8.      47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

(A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B)     to dial such numbers.

9.      Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call (or text message) using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

10.     A caller may not limit the manner in which revocation of prior express consent to call or message may occur and that the burden is on the caller to prove it obtained the necessary prior express consent.

11.     Further, consumers (like the Plaintiff) may revoke consent through any reasonable means, including orally or in writing.

12.     On September 20, 2018, in *Marks v. Crunch San Diego LLC*, the Ninth Circuit noted that the statutory definition of an ATDS: "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or

3

triggered by a person)[.]"[1]   The panel clarified that "[c]ommon sense indicates that human intervention of some sort is required before an autodialer can begin making calls, whether turning on the machine or initiating its functions." *Id.*

## FACTUAL ALLEGATIONS

13.     Beginning in or about July 2018, Plaintiff received text messages on his cellular phone, number ending 6944, from the Defendant at short code number 692484.  On information and belief, these texts related a separate account held by another unnamed individual for whom Plaintiff is receiving text messages by mistake ("Unidentified Account").  Citi never had Plaintiff's prior consent to be contacted regarding his second account-holder.  Citi's text messages informed Plaintiff that he could reply STOP to opt out.  On July 26, 2018, Plaintiff texted STOP in accordance with Citi's direction, thereby revoking any prior consent he had to be contacted via text message; however, Plaintiff continued to receive numerous text messages on this account, until Citi finally ceased contacting him.

14.     In March 2019, Plaintiff obtained an account with Citi which he opened at a Las Vegas, Nevada branch of the company.  At that time, Plaintiff was asked at that time if he wanted to receive text alerts.  Plaintiff explicitly restricted his consent to receive alerts to those related to transactions of $101 or greater related to the account that he held with Citi.  However, Citi has subsequently sent him numerous text messages related to transactions less than or equal to $100, in violation of his prior consent, and in fact frequently does so when he uses his debit card.  Additionally, after enrollment Citi immediately resumed its unlawful practice of sending Plaintiff text messages related to the Unidentified Account, sending Plaintiff approximately 1 and 9 messages per day.

---

[1] 904 F.3d 1041, 1052-53 (9th Cir. 2018).  Consequently, the Court rejected appellee's "argument that a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without any human intervention whatsoever." *Id.*

Plaintiff texted STOP to Citi on at least five more occasions pursuant to its own revocation instructions, but continued to receive unconsented-to text messages.

15.     As of the filing date of this Complaint, these unlawful text messages, in the aggregate, number in the hundreds.

16.     Defendant employs a type of technology called "Short Message Services." The term "Short Message Services" or "SMS" is a messaging system that allows cellular phone subscribers to use their cellular telephone to send and receive short text messages, usually limited to 160 characters.

17.     An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be instantly received by the called party virtually anywhere in the world.

18.     Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1) to transmit its phone calls to Plaintiff.

19.     Upon information and belief, Citi conducted dialing campaigns using its ATDS to the Plaintiff's cell phone.

20.     "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

21.     Predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

22.     Upon information and belief, Citi sent texts to the Plaintiff using an ATDS without consent to place to such texts.

23.     As a result, Defendant's texts violated the TCPA.

24.     Defendant's ATDS has the capacity to store telephone numbers for which phone calls (or text messages) would be sent, using a random or sequential number generator.

25.     The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

26.     Defendant's text messages sent to Plaintiff's cellular telephone were not for "emergency purposes."

27.     Pursuant to the TCPA, the burden is on Defendant to demonstrate that it had prior express consent (PEC) to send text messages to Plaintiff's cellular phone with an ATDS.

28.     The Plaintiff suffered actual harm and loss, since receiving and viewing each of the unwanted text messages depleted the Plaintiff's cell phone's battery and caused the loss of cell phone minutes; and the cost of electricity to recharge the phone, and the loss of minutes on a phone plan, are tangible harms.  While small, these costs are real, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from the Defendant's unwanted texts to the Plaintiff's cell phone.  Plaintiff also lost time reviewing these messages and continuously attempting to revoke his consent, that he could have otherwise devoted to his personal and business affairs.

29.     Plaintiff also suffered from an invasion of a legally protected interest by making texts to the Plaintiff's personal phone line when the Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy.  The TCPA protects consumers from this precise behavior.

30.     As a direct consequence of Defendant's harassing text messages, the Plaintiff suffered

emotional distress, including but not limited to worry that his account information had been compromised due to the fact that Citi did not honor his attempts to revoke consent.

31.     Plaintiff has a common law right to privacy. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

32.     "[W]hen a person must endure the bother of unwanted calls in the privacy of his home, his harm is similar to other traditional injuries that courts have long recognized, such as invasion of privacy and nuisance." *Toldi v. Hyundai Capital Am.*, No. 2:16-cv-01877-APG-GWF, 2017 WL 736882, at *2 (D. Nev. Feb. 23, 2017).

33.     Plaintiff was also personally affected, since the Plaintiff felt that the Plaintiff's privacy had been invaded when the Defendant placed text messages to the Plaintiff's phone line when it lacked consent to do so.

34.     The injury suffered by Plaintiff is concrete because Defendant's violations caused Plaintiff to suffer an invasion of privacy.

35.     Citi sent hundreds of unlawful text messages either without Plaintiff's prior express consent or after Plaintiff revoked any consent he had, and subsequently refused to honor his consent despite having texted STOP on at least six occasions. Thus, Citi lacks acceptable procedures for either accepting and honoring a consumer's explicit revocation of consent, any restriction on such revocation, or to ensure that text messages are sent to the correct phone number in question. Thus, Citi's violations of the TCPA and Nevada state law are willful, and demonstrate a reckless disregard for Plaintiff's privacy. Plaintiff is thus entitled to treble damages under the TCPA, and punitive damages under Nevada state law.

36.     Plaintiff has been obligated to retain an attorney to defend his privacy interests against Citi's continued unlawful contact, and is entitled to an award of reasonable attorney's fees and costs.

**COUNT I**
**Negligent Violations of the Telephone Consumer Protection Act,**
**(47 U.S.C. § 227, *et seq.*)**
**(Plaintiff and Class 1)**

37.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

38.     Defendant negligently placed phone calls to a cellular number belonging to Plaintiff without his prior express consent using an ATDS.

39.     Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

40.     As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

**COUNT II**
**Knowing and/or Willful Violations of the Telephone Consumer Protection Act,**
**(47 U.S.C. § 227, *et seq.*)**

41.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

42.     Defendant knowingly and/or willfully placed phone calls to cellular numbers belonging to Plaintiff without his prior express consent using an ATDS.

43.     Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

///

8

44.     As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**COUNT III**
**Intrusion Upon Seclusion**

45.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

46.     Defendant intentionally placed phone calls to Plaintiff repeatedly or continuously in a manner considered by a reasonable person to be annoying, abusive or harassing.

47.     Each of the aforementioned calls by Defendant violated Plaintiff's right to privacy.

48.     As a result of Defendant's violations of Nevada common law, Plaintiff is entitled to an award of damages, as well as an award of costs and reasonable attorney's fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs seeks judgment against the Defendant awarding as follows:

1.  Statutory damages of $500.00 for each and every unlawful text message directed to Plaintiff in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

2.  Treble damages of up to $1,500.00 for each and every unlawful text message directed to Plaintiff in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

3.  Actual damages for violating Plaintiff's privacy interests under Nevada common law;

4.  Punitive damages for violating Plaintiff's privacy interests under Nevada common law;

///

///

9

5.  An award of attorney's fees and costs to counsel for Plaintiff; and

6.  Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: December 19, 2019

Respectfully submitted,

By  /s/ David H. Krieger, Esq.
David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148

Attorney for Plaintiff