# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DANIEL ZEEVI,

            Plaintiff,

vs.

CITIBANK, N.A.,

            Defendant.

Case No.: 2:19-cv-02206-GMN-BNW

**ORDER**

Pending before the Court is the Motion to Compel Arbitration and Dismiss Plaintiff's Complaint, (ECF No. 18), filed by Defendant Citibank, N.A. ("Defendant"). Plaintiff Daniel Zeevi ("Plaintiff") filed a Response, (ECF No. 19), and Defendant filed a Reply, (ECF No. 20). For the reasons set forth below, the Motion to Compel Arbitration is **GRANTED**.

## I.  BACKGROUND

This case arises out of Plaintiff's allegations that Defendant sent automated calls and text messages to his cell phone without consent, violating the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. (Compl. ¶ 1, ECF No. 1).

On March 19, 2019, Plaintiff opened a bank account with Defendant at a Las Vegas, Nevada Citibank branch. (*Id.* ¶ 14). In doing so, Plaintiff allegedly restricted any potential text notifications related to his transaction history to those transactions of $101.00 or greater. (*Id.*). However, Plaintiff claims that Defendant sends him text messages related to transactions less than or equal to $100.00. (*Id.*). Further, Plaintiff asserts that Defendant also mistakenly sends him text messages related to an unnamed individual's unidentified account. (*Id.* ¶¶ 13–14). Despite opting out of these messages, Plaintiff states that he receives between one and nine messages related to the unidentified account each day. (*Id.*). Plaintiff also states that he

attempted to revoke any consent that he may have given relating to these text messages. (*Id.* ¶ 28).

Based on these allegations, the Complaint sets forth claims for: (1) negligent violations of the TCPA; (2) knowing or willful violations of the TCPA; and (3) intrusion upon seclusion. (*Id.* ¶¶ 37–48).  In the instant Motion, Defendant argues that the Court should compel arbitration of Plaintiff's claims in accordance with the arbitration agreement detailed in Defendant's Client Manual Consumer Accounts ("Client Manual"). (*See* Mot. Compel 1:20–2:5, ECF No. 18).  Defendant asserts that Plaintiff agreed, in a signed writing, to the terms of the Client Manual when he opened his bank account. (*Id.* 2:4–10).  The arbitration policy in relevant part states:

> Either you or we may elect, without the other's consent, to require that any dispute between us, or concerning your Citibank deposit account(s), except those disputes specifically excluded below, be resolved by binding arbitration.[1]

(Client Manual at 52, Ex. A-1 to Mot. Compel, ECF No. 18-2).  Additionally, it contains a delegation clause, which provides:

> A party who initiates proceedings in court may elect arbitration with respect to any dispute advanced in that proceeding by any other party. Disputes include claims made as part of a class action or other representative action, it being expressly understood and agreed to that the arbitration of such claims must proceed on an individual (non-class, non-representative) basis. *Disputes also include claims relating to the enforceability or interpretation of any of these arbitration provisions.*

---

[1] The exclusion clause provides as follows: "Disputes filed by you or by us individually in a small claims court are not subject to arbitration, so long as the disputes remain in such court and advance only an individual claim for relief." (Client Manual at 52, Ex. A-1 to Mot. Compel, ECF No. 18-2).

(*Id.*) (emphasis added).  Because of this arbitration agreement, Defendant asserts that the Court should compel arbitration and dismiss this case without prejudice, pursuant to the Federal Arbitration Act. (*See* Mot. Compel 5:24–6:5).

## II.   LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).  Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Thus, the Court's "role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013).  The party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal

quotation marks and citation omitted). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

## III. DISCUSSION

In his Response, Plaintiff claims that the arbitration agreement contained within Citibank's Client Manual is unconscionable, and thus, unenforceable. (Pl.'s Resp. 6:6–11, ECF No. 19). In contrast, Defendant asserts that because the arbitration agreement contains a delegation clause reserving decisions on "claims relating to the enforceability and interpretation of . . . the arbitration provisions" for the arbitrator, the Court should leave the question of unconscionability to the arbitrator. (*See* Def.'s Reply 1:18–19, ECF No. 20); (Client Manual at 52, Ex. A-1 to Mot. Compel).[2]

While arbitration provisions are typically enforceable, Courts may invalidate them through "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, a delegation clause may create an additional agreement between the parties to submit the threshold question of arbitrability to an arbitrator instead of the court. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (2015) ("gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise'"). In *Rent-A-Center, West, Inc. v. Jackson*, the Supreme Court considered "whether, under the Federal Arbitration Act . . . a district court may decide a claim that an arbitration agreement is unconscionable, where the agreement explicitly assigns that decision to the arbitrator." 561 U.S. 63, 65 (2010). The Supreme Court held that, unless such a delegation clause itself is challenged, the Court should defer ruling on the

---

[2] In this case, Defendant has met its burden to show the existence of an arbitration agreement; Defendant provided evidence of the contract including the arbitration agreement that was signed by Plaintiff, and Plaintiff neither contested this evince, nor raised any dispute of material fact regarding the arbitration agreement's formation.

gateway questions to the arbitrator. *See id.* at 70 ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement that the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

In the present case, the parties clearly and unmistakably assigned the arbitrability of the arbitration agreement to the arbitrator by expressly delegating disputes including "claims relating to the enforceability or interpretation" of the arbitration agreement. *See, e.g.*, *Mwithiga v. Uber Technologies, Inc.*, 376 F.Supp.3d 1052, 1056 (D. Nev. 2019) (deferring to the arbitrator when the arbitration agreement delegated "disputes arising out of or relating to interpretation of application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision"). Accordingly, the holding in *Rent-A-Center* controls, and the authority to decide the unconscionability of the arbitration agreement lies with the arbitrator, unless Plaintiff specifically argues that the delegation clause is unconscionable.[3]

Here, Plaintiff does not specifically challenge the delegation clause beyond the unsubstantiated claim that it is unconscionable. First, Plaintiff claims that the delegation clause is unconscionable because the Client Manual's "Limitation on Time to Sue or Arbitrate" clause circumscribes the four-year statute of limitations in the TCPA. (Pl.'s Resp. 3:7–13). However, this clause is seemingly unrelated to the delegation clause, and in fact, is not even contained within the arbitration agreement section of the Client Manual. Plaintiff does not explain how this potential time limitation affects the delegation clause or renders it unconscionable.

---

[3] In *Rent-A-Center*, the contract at issue was a stand-alone arbitration agreement that was not part of a larger contract. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010). However, in *Brennan v. Opus Bank*, the Ninth Circuit applied the holding in *Rent-A-Center* to an employment contract containing an arbitration agreement with a delegation clause. *See* 769 F.3d 1125, 1133 (9th Cir. 2015). Similarly, the present case involves a larger contract unrelated to arbitration, Citibank's Client Manual, but that contract contains an arbitration agreement with a delegation clause. Accordingly, like in *Brennan*, the holding of *Rent-A-Center* applies.

Similarly, Plaintiff claims that the delegation clause is unconscionable because a "disparity in bargaining power [resulted] in a take-it-or-leave-it contract of adhesion." (*Id.* 5:14–19). Nonetheless, Plaintiff again fails to explain the significance of an alleged contract of adhesion with particular respect to the delegation clause. (*Id.* 5:14–19). Therefore, these first two challenges are more appropriately aimed at the unconscionability of the arbitration agreement as a whole, and thus are not specifically challenging the delegation clause. *See Rent-A-Center*, 561 U.S. at 70 ("unless [Plaintiff] challenged the delegation provision specifically, we must treat is as valid . . . and must enforce it . . ., leaving any challenge to the validity of the [arbitration agreement] as a whole for the arbitrator"). Finally, Plaintiff claims that the delegation provision is unconscionable because it restricts the scope of discovery, but the Supreme Court has determined that this argument does not successfully challenge a delegation clause. *See Rent-A-Center*, 561 U.S. at 74.[4] Accordingly, any threshold questions, including unconscionability, fall within the authority of the arbitrator, and Defendant's Motion to Compel Arbitration is granted.[5]

---

[4] In *Rent-A-Center*, the Court described how disputing discovery procedures could have directly challenged the delegation provision: Plaintiff "would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable." 561 U.S. at 74. In other words, an argument that the limitation on discovery specifically applied to the delegation clause, which would make the arbitration of the arbitrability of the arbitration agreement unconscionable. However, here, Plaintiff makes no such argument.

[5] Even if the Court were to consider the unconscionability of the arbitration agreement, Plaintiff's arguments would likely fail. Under Nevada law, both procedural and substantive unconscionability must be present in order for a court to refuse to enforce a clause as unconscionable. *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004); *see also Burch v. Second Judicial Dist. Court of State ex rel. Washoe*, 49 P.3d 647, 650 (Nev. 2002). Here, Plaintiff failed to demonstrate procedural unconscionability. Plaintiff's argument for procedural unconscionability is that the arbitration agreement is a contract of adhesion. (Pl.'s Resp. 5:14 –19, ECF No. 19). However, Citibank's Client Manual contained an opt-out provision that would have allowed Plaintiff to avoid the arbitration agreement if he chose to exercise it. (*See* Client Manual at 55, Ex. A-1 to Mot. Compel, ECF No. 18-2). In the Ninth Circuit, an arbitration agreement is conscionable as a matter of law if there is an opportunity to opt out of it. *See Mohamed v. Uber Technologies, Inc.*, 836 F.3d 1102, 1111 (9th Cir. 2019) (overruled on other grounds).

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration, (ECF No. 18), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Complaint, (ECF No. 1), is **DISMISSED** without prejudice because Plaintiff must first comply with the arbitration requirements. The Clerk is instructed to enter judgment accordingly and close the case.

**DATED** this __16__ day of February, 2021.

_____
Gloria M. Navarro, Chief Judge
United States District Court